Rivera, Plaintiff and Appellant, *v.* Successors of López Villamil & Co., Defendants and Appellees.

Appeal from the District Court of San Juan in an Action for Damages.

No. 2104.—Decided March 29, 1921.

Motor Vehicles—Negligence—Contributory Negligence.—A person can not be charged with contributory negligence for failing to ascertain whether there is danger in passing near a loaded truck if the facts show that he had no reason to suspect any danger. To hold that a child of eleven years of age is guilty of contributory negligence in approaching a running loaded truck would be to draw a dead-line around loaded motor vehicles within which any pedestrian who failed to stop and consider the manner in which the cargo is loaded to prevent its falling would risk himself at his own peril.

Id.—Id.—Id.—Children—Carefulness.—Although many of the older decisions are to the contrary, it is well settled that the strict rule applicable to the conduct of an adult for determining whether he exercised due care to avoid the danger should not be applied to the conduct of a child, but the standard whereby the conduct of a child should be measured to determine whether it exercised due care is the care ordinarily observed by children of the same age, capacity, discretion, knowledge and experience, under equal or similar circumstances.

The facts are stated in the opinion.

*Mr. E. López Tizol* for the plaintiff.

*Messrs. Chas. Hartzell* and *F. Ramírez* for the deféndants.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The complaint herein alleges among other things:

"4. That according to information received, at about 3 p. m. of December 30, 1917, defendant's truck No. 829, driven by chauffeur Ramón Gemaro, an employé of the company and acting in that capacity, badge No. 9323, traveling from south to north and at Stop 3, Puerta de Tierra of this city, loaded with 125 sacks of rice for the mercantile establishment of the defendant under the supervision of several of its employés, acting in such capacity at the time of the accident, in crossing the electric car line opposite the Covadonga Drive and due exclusively to the lack of attention, fault and negligence of the defendant, since the said truck was not provided with the necessary stakes or railing, several of the sacks fell out, striking the son of the plaintiff, Aurelio Salvat, who was passing at the time and without any fault, negligence or inattention on the part of the latter, since he was proceeding along the left-hand side of the road, which is a safe and protected place, thereby inflicting several bruises on his body and breaking or fracturing his right leg, causing his removal to the Emergency Hospital where he was confined to his bed for more than a month."

The defendant, in answer to this, avers:

"3. That he denies the fourth paragraph of the complaint as set forth and likewise avers that according to information he believes to be true, on December 30, 1917, at about 3 o'clock and while the truck driven by chauffeur Ramón Gemaro was going from the San Antonio wharf to San Juan, in passing by Stop 3 of Puerta de Tierra loaded with sacks of rice, a boy about ten or eleven years of age was holding and running after the truck and in attempting to get on the rear end of the car one of the sacks of rice, weighing more than 100 pounds, fell upon his foot causing him slight injuries of which he was cured shortly thereafter. That this accident was due exclusively to the negligence and fault and lack of discretion on the part of the boy, inasmuch as he was running after the truck and attempting to board the same without any necessity therefor and simply for amusement, thus causing the sack to fall. The defendant, by its employés, acted with the utmost diligence."

The contention of appellant is that the judgment is contrary to the evidence, and the error so specified is sub-divided in the argument as follows:

"(*a*) The court erred in not deciding the case on the weight of the evidence as a whole and in not rendering judgment in accordance therewith;

"(*b*) The court erred in not rendering judgment in conformity with the preponderance of the evidence;

"(*c*) The court erred in holding that there was contributory negligence without any showing of all the elements constituting the same;

"(*d*) The court erred in considering the remote cause as the proximate cause and *vice versa;*

"(*e*) The court erred in imputing contributory negligence to a minor who lacks the discernment necessary to be charged therewith;

"(*f*) The court erred in finding contributory negligence from the mere testimony of a witness to the effect that the boy intended to board the truck when the fact is that the plaintiff was not relieved from liability even had the boy really boarded the car;

"(*g*) The court erred in not giving consideration to the doctrine of *attractive nuisance* nor to that of *turnable cases;*

"(*h*) The court erred in not applying the doctrine just cited and upheld by the Supreme Court at page —— of volume 18, P. R. R."

The conclusion reached below and the reasons therefor, as stated by the trial judge, are as follows:

"Perhaps we might have decided this case on the evidence of the plaintiff alone if the defendant made a motion for nonsuit.

"It is not enough that some of the witnesses may testify positively to a fact and that their testimony is more or less corroboratory. What is important is that the fact at least have the appearance of probability.

"The testimony of the plaintiff's witnesses is incomprehensible to us, and we never could understand how a greater or less number of sacks full of rice, which, due to their weight could not have fallen at a place very distant from that from which they began to fall should have reached a person crossing behind the truck which was carrying those sacks, and for the reason that both were not going in the same

direction, they necessarily had to be more distant one from the other as they went by.

"Our doubts were removed by witness Allende who explained the fact in the most logical way: The boy Salvat was running behind the truck with the intention of boarding it from the rear and the accident then occurred which caused the injury.

"Had he not acted in that way or intended to act in that manner without necessity and without right, he would not have sustained the injury upon which he bases his claim for damages caused by his own imprudence."

The truck at the time of the incident that gave rise to this controversy carried from 100 to 125 sacks of rice weighing 100 pounds each and a half dozen or more men besides the chauffeur. The testimony for the plaintiff at the trial established a strong *prima facie* case by eye-witnesses, who, with a single exception, were employés of the defendants riding on the truck at the time of the incident. All of these former employés, Allende alone excepted, were shown not to be working for the defendants at the time of the trial, although there is no suggestion of any ill-will or cause for resentment on the part of any one of such ex-employés. One of them explains that he only works during the winter season and that the defendants send for him when they want him. Allende was the last witness to testify for the plaintiff and although no complaint is made of surprise at his testimony, it is difficult to conceive upon what theory the plaintiff would have put him on the stand had it been possible to anticipate his statement and opinion as to the action and purpose of the boy in running after the truck, or that the trial judge would adopt such statement and opinion as the basis for an adverse judgment.

Aurelio Salvat was eleven years and thirteen days of age at the time his leg was broken. Both he and his parents were born and, up to the time of his father's death in November, 1911, lived in a small mountain village. The father was a laborer and the mother a washerwoman. The date upon which the widow brought the child to San Juan does

not appear. Beyond the circumstance that mother and son lived in Puerta de Tierra at the time of the injury, there is nothing to show what opportunities the son may have had for observation and experience as to the danger involved in crossing the street in the rear of a heavily loaded truck, or in running after the same, when in motion. Even according to the testimony of Allende, and that of a witness for defendant who makes a somewhat similar statement, plain-tiff was not a trespasser, whatever may have been his intention in running after the truck, if he did run after it; and assuming the testimony of these two witnesses to be true, his prompt obedience to the command forbidding the accomplishment of the design imputed to him, if not a point in his favor, can hardly be considered as an incriminating circumstance. He had an equal right with the truck to be upon the road and it is at least open to argument whether the act of crossing immediately behind, or approaching from the rear, a loaded truck moving along a paved or macadamized city street, and this without close inspection of the manner in which the same is loaded or the load secured from falling to the ground, could be regarded as contributory negligence in an adult. "Negligence is not imputable to a person for failing to look for danger when under the surrounding circumstances he had no reason to apprehend any." *Rosado* v. *Ponce Railway and Light Company,* 20 P. R. R. 528, at page 548, and authorities cited.

The boy, at the time of the trial, two years after the accident, was in his thirteenth year and in the first grade at school. His own testimony is that he does not know the alphabet, but is acquainted with numbers, and that two and two make four. Neither does this testimony nor the record elsewhere disclose that, aside from his schooling and prior to the date of the injury, his experience had been such as to develop powers of observation and judgment beyond what might be expected in the average child of eleven.

"Although there are several of the earlier decisions to the con-

trary, it is well settled that the rigid rule applied to the conduct of an adult in determining whether he exercised due care to avoid danger is not to be applied to the conduct of a child, but that the standard by which the conduct of a child should be measured, in determining whether it exercised due care, is the care which is ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances.'' Note to *Jacobs* v. *Koehler Sporting Goods Co.,* L. R. A. 1917 F, p. 7 at p. 13.

''As is apparent from the general rule above stated regarding the standard by which a child's conduct is to be measured, the law requires, in determining the question of contributory negligence, consideration of the mental development, knowledge, capacity, and experience of the individual child. That is, the question is not whether the child acted as an ordinarily prudent child of its age would have acted, but whether it acted as a child of its age, and of its capacity, discretion, knowledge, and experience would ordinarily have acted under the same or similar circumstances. In some cases this distinction is pointed out. Thus, in an Alabama case it was said: 'There is no inflexible rule by which we can determine the capacity of all children under all circumstances for observing and avoiding danger; each child is bound to use the reason it possesses and to exercise the degree of care and caution of which it is capable. One child may understand and appreciate one danger, and not another. Another child, of the same age as the first may understand the danger the first does not, and be insensible to the danger of which the first was aware. A child raised in the city may be perfectly capable of understanding and avoiding the danger of street cars, railroads, and crowded streets, but insensible of the dangers of a mowing or threshing machine, a foot adz, or scythe blade, etc.; while a child of the same age and average intelligence, raised on a farm, would fully comprehend and understand the dangers of the latter class, but be wholly unconscious or ignorant of those of the former. Some children at the age of seven better understand the dangers of trains and cars than do others at fourteen. Therefore, the capacity, the intelligence, the knowledge, the experience and discretion of the child are always evidentiary circumstances. There is no ideal standard by which the court or jury can determine whether a given child in a particular case exercised that measure of care which the law requires.' And in a recent Utah decision it was held that a child is required to use that degree of care which a person of its knowledge,

experience, and understanding would ordinarily use under the circumstances, which may be greater than that required of an ordinary child of the same age, if its intelligence and appreciation of the danger is greater than that of an ordinary child of that age.   Other decisions are to a similar effect.''   *Idem,* page 29.

Obviously the court below entirely ignored the principle that should govern in cases of this kind.

Nor is the veracity of witnesses for the plaintiff questioned at all by the trial judge save on the ground of a certain inconsistency between their testimony and a distorted view of the physical facts.   A falling bag of rice may or may not be governed in its downward course solely and exclusively by the law of gravity.   The rate of increase in distance within a specified period of time between a forward moving vehicle and a pedestrian crossing the road behind such vehicle, whether diagonally or at right angles to its line of travel, must depend largely upon the element of speed. The difficulty always is not so much to discover the principle involved as it is properly to apply that principle to the given facts.

Here we have a heavily loaded, slow-moving truck that had just turned the corner out of a narrow street and proceeded but a few meters up-grade to the street-car tracks at the top of this short incline.   At this point either the jolt or the recoil of the springs, or both, that followed the dropping of the rear wheels into a ditch, or other depression in the road, resulted in the loss of a portion of the load.

These facts, as well as the testimony, show beyond question that the truck, the maximum speed of which seems to have been not more than eleven miles per hour, was going but little if any faster than a man could walk or an active boy of eleven might move when sent on an errand.   The testimony of a witness for the defendant that ''it was customary to load one hundred sacks of rice upon the car and it could carry no more,'' if true, may indicate that the estimate of

the number of sacks as being 125, made by witnesses for the plaintiff, is not so conservative as it might be, but, in pointing to a full capacity load, throws no doubt upon the foregoing statement as to the probable speed of the vehicle. And if a pedestrian approaching the rear wheel as it passed him were crossing a street behind such vehicle, he might easily be struck by a falling object bounced from the top of the load. And if he should take a more or less diagonal course bearing in the direction traveled by the truck, this would increase the probability of coming in contact with any such object.

In the interest of brevity we abstain from any discussion of the numerous elements and intervening agencies overlooked by the court below which would occur at once to any thoughtful mind upon reviewing the evidence and which, under one aspect or another of the testimony, may have operated to prevent the perpendicular descent of the particular sack of rice that struck the plaintiff. Whether, as suggested by the testimony for the defendant, but a few or not more than one or two sacks were thrown from the top of the load or whether, as most of the witnesses affirm, it was the hindmost stack of sacks that fell,—whether the boy was within two meters of the tail of the truck, the maximum distance fixed by any witness, or within one meter thereof, the minimum mentioned by Allende,—whether the bag that broke the boy's leg fell at right angles to the horizontal or deviated somewhat from the perpendicular or in the course of its trajectory described a parabolic curve,—whether the plaintiff was crossing the road behind the truck or running after the same, with or without the intention to steal a ride,—are not, in the view we take of the case, matters of vital importance.

There is no evidence whatsoever of contributory negligence beyond the circumstances already indicated, and the showing as to such negligence is a matter of defense which

must be pleaded and proved by the defendant. *Rosado* v. *Ponce Railway and Light Company, supra; González* v. *Malgor, Luiña & Company, ante,* page 97.

The only witness for the defendant who testified on this point, and whose testimony is no more favorable to the theory of the defense than is that of Allende, says that he was seated in the middle of the car on top of the load. His narrative not only does not show how he managed to see so much from the position in which he thus places himself, but, as a whole, gives the impression that he is stating conclusions drawn from what he saw and heard rather than facts. In so far as pertinent, it follows:

" * * * that the accident occurred in crossing the trolley track while coming from San Antonio on an up grade and the boy was about to board the car when the latter was jolted by passing a ditch and one of the sacks fell and struck the boy; that the witness saw the boy at a time when other boys were telling him not to catch hold of the car; that the boys who were shouting were those at work on the car with the witness; that he supposes the boy was about to take hold of the rear of the car, as he was running after it, which supposition he bases exclusively on the fact that the boy was running after it to catch hold of it; that the boy was close to it because when the car ran into a ditch a sack fell and struck him, he being about half a yard away; that the boy was very close to the truck and that it was impossible to estimate the distance as the truck was in motion; that he saw the boy coming towards the car, although the boy did not cross behind the car; that the grade is thus: here is the trolley track, the boy was running behind the car and after crossing the track the car was jolted by running into a ditch and a sack fell out; that the car had stakes at the rear; that these trucks have a railing at the rear from one side to the other inclosing the space occupied by five sacks; that the truck has three stakes at the rear to avoid the falling out of sacks, but on the day of the accident one stake was missing; that the witness is sure that the boy was warned not to hang on the car, for which reason he did not take hold of it; that the witness heard the shouting and looked back when the boy had already fallen in the middle of the track; that he saw the boy while he was running; that the witness was seated and was looking

back; that he thinks the boy was about to board the car as he was running behind it.''

No doubt, in many instances, a frustrated or abandoned attempt to commit a trespass might not only contribute to, but even constitute, the proximate cause of the injury, but in the absence of any such causal connection the motive would seem to be immaterial. A mere mental attitude or tentative purpose to do an imprudent thing can hardly be said to convert into contributory negligence the walking or running of a pedestrian in the otherwise lawful exercise of his legal right to the use of the public roads or streets of a city. And if it be contributory negligence for a child of eleven to approach a loaded vehicle on the street, then, *a fortiori,* an adult who does this would be equally if not much more guilty. So to hold would be to draw about loaded motor trucks a deadline beyond which any pedestrian who might fail to pause and consider the manner in which the load is arranged and secured from falling would venture at his peril. This we are unwilling to do.

Aside from the matters already discussed there is no real conflict in the evidence.

It follows that by reason of the failure to give due consideration to the law governing the question of contributory negligence when imputed to a child of tender years and to include the more important determining factors in arriving at a decision based upon an abstract physical law rather than facts, thus vitiating the conclusion so reached, the case was not decided upon its merits. In the circumstances, we prefer to remand for a new trial rather than to render a final judgment in the first instance upon the facts disclosed by the record as it stands. And, having determined upon this course, we abstain from any further discussion or expression of opinion upon the merits or in regard to the other matters suggested by the assignment of errors, leaving the parties and the court below free to elaborate and determine

as many of the questions involved as may be deemed pertinent to the issue herein.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.